| | | |
|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | |
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Steven Sugars | Edward Lear |

**Proceedings:** EVAN FREED'S MOTION TO DISMISS (Filed March 8, 2017, Dkt. 50)

## I. INTRODUCTION

On or about September 2, 2016, Yijin Lu, Yunyao Zhai, Qian Han, and Yuhan Yang filed a complaint against Daniel Hong Deng, Evan Philip Freed, Floyd Rayford Fountain, Robert Cornforth, and Does 1 through 50 in the Los Angeles County Superior Court. Dkt. 1, Ex. A. On September 23, 2016, plaintiffs filed an amendment in Los Angeles Superior Court based upon plaintiffs' discovery that Doe 1's true name is Patricia Hattersley. Dkt. 27 Ex. 1. On September 28, 2016, defendants filed a Notice of Removal to the United States District Court for the Central District of California. Dkt. 1.

On September 30, 2016, Cornforth filed a motion to dismiss all claims for relief alleged against him. Dkt. 7. On November 7, 2016, the Court dismissed all claims against Cornforth without prejudice and ordered plaintiffs to file a RICO case statement setting forth their civil RICO allegations against any defendant, dkt. 28, which plaintiffs filed on December 6, 2016, dkt. 31.[1]

The initial complaint alleged eight claims against Freed. On December 20, 2016, Freed filed a motion to dismiss the claims against him. Dkt. 37. On January 23, 2017, the Court granted Freed's motion and gave plaintiffs 30 days leave in which to file any amended pleadings. Dkt. 40. In its January 23, 2017 order, the Court ruled that plaintiffs

[1] On December 6, 2016, plaintiffs also filed a notice of dismissal with respect to Cornforth and Hattersley. Dkt. 30.

had failed to satisfy Rule 8 by setting forth what relief, and on what theory, plaintiffs sought to proceed against Freed. Id. at 11.

On February 22, 2017, plaintiffs filed a First Amended Complaint ("FAC"), dkt. 47, and an amended RICO case statement, dkt. 48. Plaintiffs have not sought to re-allege any of their original claims against Freed. Instead, the FAC alleges a single claim against Freed for violation of California Business and Professions Code § 6148, relating to contracts between attorneys and clients.

On March 8, 2017, Freed filed the instant motion to dismiss plaintiffs' claim against him. Dkt. 50. On March 20, 2017, plaintiffs filed an opposition. Dkt. 51. On March 27, 2017, Freed filed a reply.[2] Dkt. 52.

Having carefully considered the parties' arguments, the Court rules as follows.

## II. BACKGROUND

Plaintiffs are two inmates in California prison and their mothers. In Los Angeles County Superior Court Case Number KA109395 ("the Criminal Case"), Zhai and Yang were both charged with several felonies, including torture under California Penal Code section 206, multiple counts of kidnapping under California Penal Code section 207(a), and assault by force likely to produce great bodily injury under California Penal Code section 245(a)(4).[3] FAC ¶ 12. Zhai and Yang were ultimately convicted and are presently serving their respective sentences. Lu is Zhai's mother. Han is Yang's mother.

In April 2015, plaintiffs sought legal representation in the Criminal Case. On or about April 5, 2015, Lu met, in person, with Deng to discuss Zhai's representation in the Criminal Case. Id. ¶ 25. Plaintiffs allege that Deng made several misrepresentations to Lu regarding his ability to obtain a favorable result in the Criminal Case and the need for a very high fee. Ultimately, on April 8, 2015, Lu, acting on behalf of her daughter who

[2] Because the instant motion is brought by Freed alone and has not been joined by any of the co-defendants, the Court refers to Freed as "defendant" for purposes of this order.

[3] Unless otherwise noted, the following background is drawn from allegations in the FAC.

was in jail at the time, signed a retainer agreement. Id. ¶ 13; FAC Ex. 1 ("Retainer Agreement").

The Retainer Agreement Lu signed purported to be an "Attorney Retainer Agreement" between Zhai and both Freed and Deng. FAC Ex. 1 at 1. It listed both Freed and Deng as attorneys who would, "take all steps" necessary to represent Zhai in the Criminal Case in exchange for a "flat-rate NON-REFUNDABLE retaining fee of ***Two Hundred Thousand*** Dollars ($200,000.00)." Id. (emphasis in original). At the bottom of the Retainer Agreement is a signature block. Under one line, Freed's name is printed. Id. at 2. Plaintiffs allege that Deng signed above Freed's name and that Freed never saw or signed the Retainer Agreement. FAC ¶ 13.

After signing the Retainer Agreement, Lu allegedly called her husband in China from Deng's office. Id. ¶ 29. At Deng's instruction, Lu's husband wired the equivalent of $200,000 in Chinese Yuan to Deng's sister in China. Id. On April 10, 2015, Deng gave Lu a receipt for the payment of the $200,000 fee. Id. ¶31.

Plaintiffs do not allege that, at the time Lu signed the Retainer Agreement, she had ever met or communicated with Freed – Lu had only spoken with Deng. Id. ¶25. Nor do plaintiffs allege that they entered into a contract with Freed or otherwise reached an agreement with Freed. Freed did not sign the Retainer Agreement, id. ¶ 15, and was not aware of any of its terms, id. ¶ 16. Freed had not seen or known the terms of the Retainer Agreement Lu signed until this suit began. Id. Plaintiffs allege that Freed never authorized Deng to execute the Retainer Agreement on his behalf, id. ¶ 17, but that, on April 8, 2015, Freed nonetheless began providing legal services to Zhai in connection with the Criminal Case, id. ¶ 14.

Plaintiffs allege that Freed anticipated and was aware that his legal services to Zhai would result in over $1,000 in reasonable attorneys' fees for Zhai. Id. ¶ 14. Ultimately, Deng allegedly told Freed that he had only been paid $20,000 in relation to Zhai's representation and that the two would divide the fees equally. Id. ¶ 70. Freed allegedly received $10,000 from Deng for Freed's legal work on behalf of Zhai. Id. Plaintiffs allege that the reasonable value of the legal services provided by Freed was substantially less than $10,000. Id. ¶ 71.

It is unclear when, if ever, plaintiffs claim to have met Freed. Plaintiffs allege that in "about early September 2015," Deng and Freed recommended to Zhai that she accept a plea bargain, which carried a sentence of 13 years. Id. ¶ 65. Zhai accepted the plea bargain and was sentenced to a term of 13 years imprisonment. Id. ¶ 75.

## III. LEGAL STANDARDS

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). However, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Twombly and Iqbal); Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts

presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV. DISCUSSION

California Business and Professions Code section 6148 ("Section 6148") provides, in pertinent part:

> (a) In any case . . . [except where a contingency fee is sought] in which it is reasonably foreseeable that total expense to a client, including attorney fees, will exceed one thousand dollars ($1,000), the contract for services in the case shall be in writing. At the time the contract is entered into, the attorney shall provide a duplicate copy of the contract signed by both the attorney and the client, or the client's guardian or representative, to the client or to the client's guardian or representative. The written contract shall contain all of the following:
>
> > (1) Any basis of compensation including, but not limited to, hourly rates, statutory fees or flat fees, and other standard rates, fees, and charges applicable to the case.
> > (2) The general nature of the legal services to be provided to the client.

> (3) The respective responsibilities of the attorney and the client as to the performance of the contract.

. . .

> (c) Failure to comply with any provision of this section renders the agreement voidable at the option of the client, and the attorney shall, upon the agreement being voided, be entitled to collect a reasonable fee.

Cal. Bus. & Prof. Code § 6148. Section 6148 sometimes forms the basis of a defense in an action to collect attorneys' fees. See Leighton v. Forster, 213 Cal. Rptr. 3d 899, 910 (Ct. App. 2017) (claim for fees could not be maintained where communications about fees did not comply with Section 6148 and statute of limitations for quantum meruit action had expired). Alternatively, a client may bring a claim for declaratory relief premised upon Section 6148, seeking a declaration that a retainer agreement is voidable at the client's option. See Fahs v. Bonavida, 2017 WL 942712, at *3 (Cal. Ct. App. Mar. 7, 2017). Outside of those two contexts, it is not clear that plaintiff can allege a freestanding claim pursuant to Section 6148. However, insofar as plaintiff seeks declaratory relief, there does not appear to be any basis for any such claim against Freed.

Here, plaintiffs seek to void their Retainer Agreement for Zhai's representation in the Criminal Case pursuant to Section 6148, disgorgement of the $200,000 paid for Zhai's representation, and an accounting to ensure that Freed is only paid a "reasonable fee." FAC ¶¶ 162-163. However, plaintiffs have not alleged a freestanding claim for relief against Freed.

Plaintiffs allege that Lu and Zhai received a copy of a written contract from Deng, signed by Deng and Lu. That written copy is affixed to the FAC as Exhibit 1. Exhibit 1, the Retainer Agreement, explains the total amount in fees plaintiffs will pay, the general nature of the legal services to be provided, and the attorneys' and client's respective responsibilities. Therefore, the Retainer Agreement appears to satisfy all of the requirements of Section 6148. Plaintiffs do not allege that they were never informed, in writing, of the amount they would pay in fees or that they were unaware who would be representing them. Section 6148 requires that contracts for legal services be in writing,

meet certain minimum requirements – especially disclosure of fees – and that the client gets a copy so they know the terms of the agreement.

Plaintiffs argue that:

> Clearly a retainer agreement signed by one attorney which purports to be a retainer agreement with multiple different attorneys (who are not employed by one another and not acting as each other's agents . . . ) would not comply with B&P § 6148 because that would defeat the purpose of the statute, as spelled out in its very clear and precise terms, that 'the' attorney sign a retainer agreement and provide it to his client.

Opp'n at 8. Plaintiffs argue that "Freed failed to comply with his obligation because he failed to sign a retainer agreement with which he was at least familiar and provide it to his clients. Accordingly, the FAC states a viable claim against Freed for violating B&P § 6148." Opp'n at 9.

Plaintiffs' reliance upon the words "signed by . . . *the* attorney," in Section 6148, is misplaced. Contrary to plaintiffs' bare assertion, the *purpose* of Section 6148 is not that every attorney who will work on a client's case sign the same document before the client gets their copy of the retainer agreement. Nor is the purpose of Section 6148 to ensure that the client knows whether and how their fees will be used or divided among multiple attorneys who may work on a case. Section 6148 "requires attorneys in noncontingent fee cases to procure signed, written contracts from clients reflecting rates, fees, and charges whenever it is reasonably foreseeable that their legal expenses will exceed $1,000." Huskinson & Brown, LLP v. Wolf, 84 P.3d 379, 383 (2004). Section 6148 operates "to ensure that clients are informed of and agree to the terms by which the attorneys who represent them will be compensated." Id. Section 6148 is not a codification of the Professional Code of Conduct for Attorneys in relation to fees and is silent as to whether attorneys may share fees. The plain language of Section 6148 requires that any contract for legal services that entails foreseeable fees in excess of $1,000 be set out in writing and signed by the parties to that agreement. Section 6148 simply codifies part of the common law statute of frauds, as applied to contracts for legal services. It provides an additional requirement that clients be given a copy of any contracts that may exceed $1,000 in costs to them and the caveat that clients can void legal services contracts made in violation of Section 6148, but lawyers cannot. By

ensuring that a legal services contract meet certain baseline standards and that the client obtain a duplicate copy, Section 6148 helps ensure that clients are not surprised by fees and that subsequent disputes are predicated upon formal, written contracts.

Assuming arguendo that Freed was required by Section 6148 to provide a separate written retainer agreement to Zhai and Lu – from whom he never personally sought nor received any compensation, let alone more than $1,000 – Freed's failure might permit plaintiffs to void a contract or oral agreements with Freed. However, plaintiffs don't allege any such contracts or oral agreements with Freed. In exchange for whatever services Freed performed, he was paid by Deng – not plaintiffs. Section 6148 does not permit plaintiffs' to bring a claim predicated upon an alleged agreement between Deng and Freed and ensure that Deng only paid Freed a reasonable fee.

Furthermore, even if the Retainer Agreement Lu obtained is voidable because it lacks Freed's signature, it is unclear why that would permit a claim against Freed. Plaintiffs allege that Freed had nothing to do with the Retainer Agreement, was unaware of its terms, never saw it before this case began, and did not sign it. Freed did not charge plaintiffs any fees and plaintiffs do not seek to void an agreement they made with Freed. Nor do plaintiffs allege that Freed caused them injury or owed them a contractual duty for which Section 6148 provides a remedy.

For the foregoing reasons, plaintiffs' claim against Freed is **DISMISSED**. Plaintiffs have not alleged a claim for relief against Freed.

During oral argument on the instant motion, plaintiff's counsel requested an opportunity to amend the claim pursuant to Section 6148 against Freed. Because this is the first time plaintiff has alleged such a claim, which did not appear in the original complaint, the Court will grant plaintiff **14 days leave** in which to file an amended complaint. However, plaintiff may not add new claims against Freed other than the one remaining claim alleged under Section 6148 in the FAC. Plaintiff is admonished that failure to timely file any amended allegations against Freed may result in dismissal with prejudice.

## V. CONCLUSION

Freed's motion to dismiss is **GRANTED**. Plaintiffs' claim pursuant to Section 6148 is **DISMISSED without prejudice** as applied to Freed. Plaintiff is granted **14 days leave,** from the date of this order, in which to file any amended allegations against Freed.

IT IS SO ORDERED.

| | 00 | 15 |
|---|---|---|
| Initials of Preparer | CMJ | |